UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ZHONGSHAN TANDEM PLASTIC PRODUCTS
CO., LTD.,

          Civ. No. 21-cv-02321

                     Plaintiff,

    -against-

STRAIGHTLINE CAPITAL, LLC, DAVD AULT,
CKR LAW, LLP, and JEFFREY A. RINDE,

                    Defendants.
-------------------------------------------------------------------X

## COMPLAINT

Plaintiff Zhongshan Tandem Plastic Products Co., Ltd. complaining of defendants Straightline Capital, LLC, David Ault, CKR Law, LLP, and Jeffrey A. Rinde, alleges as follows:

### Nature of the Action

1.    This action arises from repeated, ongoing, and organized fraud perpetrated by Defendants against victims in New York, Michigan, Texas, Illinois, Massachusetts, Tennessee, Pennsylvania, Arizona, Minnesota, and Canada (and likely elsewhere). At its heart, the fraud is a modern take on the classic "Nigerian Prince" scam – *i.e.*, an advance fee scam.

2.    By and through a variety of corporate entities, defendants conspired to, and executed a plan to, defraud victims out of hundreds of thousands of dollars at a time, with an aggregate loss to the victims in the millions, through fraudulent loan programs requiring an advance fee.

3.    Upon information and belief, defendants continue, to this day, to market the fraudulent loan programs in an attempt to entice more victims.

4. On March 18, 2019, the FBI issued a warning, alert number "I-031819-PSA," advising the public of "fraud actors scamming investors through fictitious standby letters of credit" (the "FBI Warning").

5. The FBI Warning contained the following information under the heading "Scam Commonalities":

    a. Offering returns or loans that are disproportionate to the risk involved;

    b. Mimicking of legitimate financial instruments like SBLCs;

    c. "Non-recourse" or "forgivable loans," where investors do not have to repay the loaned funds;

    d. "Blocking of funds" or "proof of funds," typically with the use of a SWIFT MT 799 or MT 760;

    e. Being asked to pay an advanced fee prior to funding or to initiate the loan or Investment;

    f. Transferring funds overseas or using foreign banks;

    g. Improper references to legitimate financial institutions without their knowledge or consent;

    h. Unnecessary secrecy or the signing of a non-disclosure agreement;

    i. Intricate explanations and excuses as to why the promised funds or returns have failed to materialize;

    j. The use of escrow accounts, including attorney escrow accounts; and

    k. The term "monetize."

6. Although all of these elements may not appear in any one scam, it is common for several of them to occur.

7. The defining characteristic, however, is the promise of a disproportionate return or loan without risk from a source, which is obscure or unable to be accurately verified.

8. This case involves exactly this scam.

9. Zhongshan, as the prospective loan recipient, was offered $13.8 million in loans from Ault and Straightline but was required to deposit $552,000 in escrow with CKR and Rinde to "secure" the loan.

10. The loan was never disbursed and the escrow deposit was never returned.

## The Parties

11. At all relevant times mentioned herein, plaintiff Zhongshan Tandem Plastic Products Co., Ltd. ("Zhongshan") was and is a Chinese limited liability company with a place of business at G/F Building C, No. 3 Fuqing 2nd Road, Yongxin Industrial Park, HongDong Village, Henglan Town, ZhongShan City, Guangdong.

12. Upon information and belief, and at all relevant times mentioned herein, defendant Straightline Capital, LLC ("Straightline") was and still is a Minnesota limited liability company with place of business at 2366 Minnesota 36, Suite 400, Rosenville, Minnesota 55113.

13. Upon information and belief, and at all relevant times mentioned herein, defendant David Ault ("Ault") was and is an individual having an office at 2366 Minnesota 36, Suite 400, Rosenville, Minnesota 55113 and is a resident of the State of Florida.

14. At all relevant times mentioned herein, Ault was and is the managing partner of Straightline.

15. Upon information and belief, and at all relevant times mentioned herein, defendant CKR Law, LLP ("CKR") was and still is a New York limited liability partnership having a principal place of business at 1330 Avenue of the Americas, New York, New York 10019.

16. Upon information and belief, and at all relevant times mentioned herein, defendant Jeffrey A. Rinde ("Rinde") was and is an individual having a principal place of business at 1330 Avenue of the Americas, New York, New York 10019 and is a resident of the State of Connecticut.

17. At all relevant times mentioned herein, Rinde was and is the managing partner of CKR.

### Jurisdiction and Venue

18. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §§ 1962 and 1964.

19. Supplemental jurisdiction over the common law and State law claims alleged herein is available under 28 U.S.C. §1367(a) as they arise from the same core of operative facts as those arising under 18 U.S.C. §§ 1962 and 1964 and are therefore properly brought before the Court.

20. Venue is proper in this Court under 28 U.S.C. §1391 because defendants CKR and Rinde conduct business within this District.

### Background

21. After extensive negotiation with Straightline's managing partner, Ault, on or about April 25, 2019, Zhongshan and Straightline entered into a memorandum of understanding (the "Memorandum") whereby Straightline would provide to Zhongshan a loan facility in the amount of $13.8 million (the "Loan Facility").

22. Ault executed the Memorandum on behalf of Straightline.

23. The purpose of the Loan Facility was to enable Zhongshan to fund the development, construction, and operation of a manufacturing facility.

24. On or about May 21, 2019, Zhongshan and Straightline entered into an escrow agreement with CKR as the escrow agent (the "Escrow Agreement") whereby Zhongshan agreed

to place in escrow with CKR the sum of $552,000 as a deposit (the "Deposit") toward Straightline funding of the Loan Facility.

25. The Deposit was to be applied as a credit to Zhongshan for payments under the Loan Facility.

26. Ault signed the Escrow Agreement on behalf of Straightline and Rinde signed the Escrow Agreement on behalf of CKR.

27. CKR, as escrow agent, agreed to hold and to release the Deposit subject to the terms and conditions of the Escrow Agreement.

28. More specifically, the Escrow Agreement provides in paragraph 4 as follows:

(a) The Escrow Agent shall release the Escrow Payment to the BI [Bank Instrument] provider within two (2) international banking days of receipt by the Escrow Agent of:

(i) a copy of the SWIFT MT760 with "Answer Back" from Straightline's designated bank, confirming the issuance and successful transmission of the BI;

(ii) a copy of Straightline's commitment from a third party to monetize the BI and fund the Loan, which agreement provides committed funding sufficient to pay the first disbursement and subsequent disbursements up to the Loan Amount [of $13.8 million] over a ten-month period;

(b) The Escrow Payment will be applied as a credit against the Company payments under the [Loan Agreement];

(c) Upon notice from [Zhongshan] that Straightline has failed to deliver the BI by SWIFT MT760 to Straightline's designated bank within two (2) international banking days of payment of the Escrow Payment, the Escrow Agent shall, if not previously released, return the Escrow Payment to [Zhongshan], exclusive of any bank charges, within two (2) international banking day[s] of receipt of such notice. An "international banking day" means one day on which banks in New York and London are open for business.

***

(i) Notwithstanding anything to the contrary in this Agreement, if the initial disbursement of the Loan is not made within sixty days of release of the Escrow Payment ("Closing Period"), of if all the disbursements under the Loan are not made when due under the terms of the Loan, then Straightline shall promptly reimburse [Zhongshan] the full Escrow Payment if the loan is not made within the Closing Period, or that portion of the Escrow Payment that is equivalent to the pro rata portion of the Loan not extended in accordance with its terms.

29. Zhongshan made the Deposit with CKR pursuant to the Escrow Agreement on May 30, 2019.

30. By Term Loan Agreement dated as of June 27, 2019 between Zhongshan as borrower and Straightline as lender the parties entered into a $13,800,000 Senior Secured Term Loan pursuant to which Straightline agreed to lend to Zhongshan $13.8 million (the "Term Loan Agreement").

31. In connection with the Term Loan Agreement, the parties also executed a Pledge and Security Agreement and Zhongshan executed a Senior Secured Promissory Note.

32. Despite the execution of all of the necessary operative documents to effectuate the Loan Facility and despite Zhongshan's payment of the Deposit into escrow with CKR, Straightline never funded the Loan Facility.

33. During the period between August 2019 and December 2019, Zhongshan made numerous request of defendants for payments and updates regarding the status of the loans.

34. Each time Zhongshan made such a request, defendants provided multiple excuses for why the Loan Facility had been delayed.

35. During a conference call in March 2020 Zhongshan was advised by Rinde that CKR and Rinde had released the Deposit to Straightline and Ault in direct violation of the Escrow Agreement.

36. Zhongshan has demanded the return of the Deposit in or about February 2020.

37. Defendants have failed and refused to return the Deposit to Zhongshan despite due demand therefor.

38. On or about March 1, 2020, defendants presented Zhongshan with a document that defendants claimed was an agreement for the return of the Deposit when in actuality, the document was a release of all claims against defendants without any date certain upon which the Deposit would be returned to Zhongshan.

39. Zhongshan did not execute the proposed release agreement.

### Culpable Persons

40. Each of the named Defendants are people or entities capable of holding a legal or beneficial interest in property.

### Enterprise

41. Defendants constitute an established enterprise-in-fact; the purpose of such enterprise being solely to unlawfully deprive prospective loan clients of significant sums of money, to the benefit of Defendants.

### Interstate/Foreign Commerce

42. The Deposit fund wire on April 5, 2019, took place from the Bank of China in Hong Kong and were sent to a New York account.

43. Telephone calls and mailings in furtherance of the scheme have been made to and from Minnesota, Florida, New York, and other states.

44. The alleged predicate acts have involved wire transfers from Pennsylvania, New York, Tennessee, Minnesota, Arizona, and elsewhere.

## Pattern of Racketeering Activity

45. Defendants have engaged in at least two acts of racketeering activity which occurred within the last ten (10) years; acts that have the same or similar purposes, results, participants, victims, methods of commission, or otherwise interrelated by distinguishing characteristics and are not isolated events.

46. The scheme consists of related predicate acts, extending over a substantial period of time, since at least 2014 to the present.

47. Defendants are continuing to advertise the loan program, there is a threat of continuing criminal conduct.

## Predicate Acts

### Arizona: Steve O'Neill

48. Upon information and belief, on June 24, 2015, Ault and Straightline and Rinde and CKR entered into a substantially similar agreement to the instant matter with non-party L3gacy Growth Fund, LLC ("LGF") which sought a $9 million loan.

49. Upon information and belief, Defendants required $350,000 to be placed in escrow to secure the loan with Ault and Straightline provided assurances regarding their ability to secure the loan, and Rinde and CKR provided assurances that the escrow would be held until the loan funds were secure.

50. Upon information and belief, the $350,000 escrow was provided by non-party Steve O'Neill (under false pretenses from LGF, which are not the subject of this action).

51. Upon information and belief, the funds were wired on July 2, 2015 from Arizona to CKR's account at Citibank in New York.

2700473v1 / 067919.2 / ACA

52. Upon information and belief, the loan funds were never secured or disbursed.

53. Upon information and belief, nevertheless, Rinde and CKR released the escrow.

54. Upon information and belief, on May 4, 2017, Steve O'Neill secured a judgment directing the return of the escrow funds.

55. Upon information and belief, to date, the escrow funds have not been returned to O'Neill and the litigation is ongoing in the Superior Court of the State of Arizona, County of Maricopa, under Case No.: CV2016-016821.

**Minnesota: William Krake, Adam Cozine, Brian Farrell, Timothy Nichols, PropCo**

56. Upon information and belief, in 2015, PropCo Capital Trust LLC ("PropCo") was seeking funding for a $129 million project to build a mall in Albertsville, Minnesota.

57. Upon information and belief, on December 8, 2015, PropCo entered into an agreement with Ault and Straightline and Rinde and CKR to secure funding.

58. Upon information and belief, the agreement required PropCo to contribute $4,680,000 to the escrow fund and purportedly required Straightline to contribute $5,616,000 to the escrow fund, purportedly to secure the $129 million loan.

59. Upon information and belief, when PropCo could not come up with the money, Straightline/Ault later revised the agreement to allow PropCo to contribute only $150,000 to the escrow funds (with Straightline contributing the rest pursuant to a promissory note dated December 17, 2015), with an additional $250,000 to be paid directly to Straightline for administrative fees.

60. Upon information and belief, PropCo borrowed the $150,000 to put into the escrow from Krake, Cozine, and Farrell.

61. Upon information and belief, to date, the PropCo loan has never been disbursed.

62. Upon information and belief, Ault and Straightline never put the nearly $10 million into escrow pursuant to the agreement.

63. Upon information and belief, Ault claimed at deposition that this was due to bank "compliance issues."

64. Upon information and belief, the true purpose of the transaction was simply to extract $400,000 from PropCo, Krake, Cozine, and Farrell.

65. The $400,000 has not been returned to the relevant parties.

66. This transaction is currently the subject of a lawsuit pending in the State of Minnesota, Hennepin County, Court File No.: 27-CV-18-11206.

### Tennessee: Tricia Cunningham

67. Upon information and belief, Tricia Cunningham sought a loan in an unknown amount from Defendants in 2015.

68. Upon information and belief, Cunningham placed an unknown amount in escrow consistent with Defendants' scheme.

69. Upon information and belief, her loan has never been disbursed, nor have her escrow funds been returned.

### Illinois: Tony Ciccarelli

70. Upon information and belief, Tony Ciccarelli sought financing through Defendants in or around March 2019.

71. Upon information and belief, Ciccarelli sought $10 million in loans and was required to put $400,000 in escrow to secure the loan.

72. Upon information and belief, the loan was never disbursed, and the escrow has not been returned.

### Illinois: Rick Silverstein

73. Upon information and belief, Rick Silverstein sought financing through Defendants in or around October 2019.

74. Upon information and belief, Silverstein sought $10 million in loans and was required to put $400,000 in escrow to secure the loan.

75. Upon information and belief, the loan was never disbursed, and the escrow has not been returned.

### Illinois: Joseph Ori

76. Upon information and belief, in or around June 2019, Joseph Ori sought financing through Defendants.

77. Upon information and belief, unlike the other predicate acts, wherein loan seekers sought financing primarily through Hirsch/Euwana/Monster or Ault and Straightline (with Rinde and CKR as escrow agent), Ori met with Rinde at CKR's offices in New York, wherein Rinde himself pitched the loan program, and Rinde solicited Ori to put $400,000 in escrow.

78. Upon information and belief, Ori declined to participate in the loan program – in addition to warning Rinde that Rinde was likely breaking the law by participating in the program.

### New York: Wayne DeMilia and MarWay Entertainment

79. Upon information and belief, on July 24, 2014, Wayne DeMilia of Marway Entertainment provided Defendants with $75,000 to secure a loan in the amount of $6 million.

80. Upon information and belief, the loan was never disbursed and the $75,000 has not been returned.

81. Upon information and belief, this transaction is currently the subject of a pending lawsuit in the State of New York, County of Rockland, Index #: 34680/2019.

### Pennsylvania: John Lubimir

82. Upon information and belief, John Lubimir sought financing through Defendants in or around March 2019.

83. Upon information and belief, Lubimir sought $14-15 million in loans and was required to put $600,000 in escrow to secure the loan.

84. Upon information and belief, the loan was never disbursed, and the escrow has not been returned.

### Canada: Kevin Granger

85. Upon information and belief, Kevin Granger sought financing through Defendants in or around September 2019.

86. Upon information and belief, Granger sought $10 million in loans and was required to put $400,000 in escrow to secure the loan.

87. Upon information and belief, the loan was never disbursed, and the escrow has not been returned.

### Michigan: DHC Licensing LLC

88. Upon information and belief, DHC Licensing LLC, through a series of acquaintances, was introduced to Defendants in or about January 2019 and sought a $10 million loan facility.

89. Upon information and belief, after multiple false representations by Defendants, DHC Licensing LLC provided to Defendants a loan escrow deposit of $400,000 which was deposited with Rinde and CKR.

90. Upon information and belief, after multiple misrepresentations regarding the $10 million loan and despite due demand for return of the $400,000 escrow deposit, Defendants never returned the escrow to DHC Licensing LLC.

91. Upon information and belief, DHC Licensing LLC commenced an action against Defendants and others in the United States District Court for the South District of New York bearing Civ. No. 20-cv-2898.

### **Individual Defendants Liable**

#### Jeffrey Rinde

92. Upon information and belief, Rinde has failed to abide corporate formalities in relation to CKR which are part and parcel of the corporate existence, including but not limited to production and retention of corporate minutes and records.

93. Upon information and belief, CKR maintained, and continues to maintain, inadequate capitalization to be deemed a separate entity from Rinde.

94. Upon information and belief, Rinde and CKR intermingled personal and business funds.

95. Upon information and belief, Rinde exercised complete domination over the CKR entity, which functioned solely under the discretion of Rinde.

96. Moreover, as set forth above, Rinde has utilized the corporate entity CKR to perpetrate fraud upon Zhongshan (and others).

#### David Ault

97. Upon information and belief, Ault has failed to abide corporate formalities in relation to Straightline which are part and parcel of the corporate existence, including but not limited to production and retention of corporate minutes and records.

98. Upon information and belief, Straightline maintained, and continues to maintain, inadequate capitalization to be deemed a separate entity from Ault.

99. Upon information and belief, Ault and Straightline intermingled personal and business funds.

100. Upon information and belief, Ault and Straightline shared common addresses and phone numbers; to wit, the former Minnesota marital residence of Ault, is also the business address of Straightline.

101. Upon information and belief, Ault exercised complete domination over the Straightline which functioned solely under the discretion of Ault.

102. Moreover, as set forth above, Ault has utilized the corporate entities Straightline and a new entity, Ault Capital, to perpetrate fraud upon Zhongshan (and others).

**First Claim for Relief**
RICO §1962
(incorporating all prior allegations)

103. Defendants and their affiliated corporate entities are an enterprise engaged in and whose activities affect interstate commerce.

104. Defendants are employed by or associated with the enterprise.

105. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Zhongshan as set forth above.

106. The predicate acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

107. Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. §1962(c).

108. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), Zhongshan has been injured in its business and property in that Zhongshan has been deprived of its ownership of $552,000, has lost business as a result of the fraud, and has incurred additional and substantial expenses.

**Second Claim for Relief**
RICO §1962(d)
(incorporating all prior allegations)

109. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. §1962(c).

110. Defendants have intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

111. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

112. That conduct constitutes a conspiracy to violate 18 U.S.C.A. §1962(c), in violation of 18 U.S.C. §1962(d).

113. As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §1962(d), Zhongshan has been injured in its business and property.

**Third Claim for Relief**
Breach of Contract
(incorporating all prior allegations)

114. Zhongshan has at all times performed its obligations arising under the Term Loan Agreement and related documents and the Escrow Agreement.

115. Straightline has failed to perform its obligations arising under the Term Loan Agreement and the related documents by (a) failing to make the Loans contemplated by the parties, and (b) by retaining the Deposit.

116. Rinde and CKR have failed to perform their obligations under the Escrow Agreement by releasing the Deposit.

117. Straightline and CKR have breached the Term Loan Agreement and the Escrow Agreement.

118. As a result of the foregoing, Zhongshan has been damaged in the amount of $552,000.

### Fourth Claim for Relief
Unjust Enrichment
(incorporating all prior allegations)

119. Straightline has received the substantial benefit of $552,000 and been unjustly enriched.

120. Straightline, in equity and good conscience should not be allowed to retain the substantial benefit Straightline received as a result of receiving $552,000 from Zhongshan, but not providing any services therefor.

121. As a result of the foregoing, Zhongshan has been damaged in the amount of $552,000.

### Fifth Claim for Relief
Conversion
(incorporating all prior allegations)

122. Straightline has converted assets of Zhongshan in the amount of $552,000.

123. As a result of the foregoing, Zhongshan has been damaged in the amount of $552,000.

### Sixth Claim for Relief
Money Had And Received
(incorporating all prior allegations)

124. Straightline is in possession of money had and received from Zhongshan.

125. As a result of the foregoing, Zhongshan has been damaged in the amount of $552,000.

### Seventh Claim for Relief
Fraud in the Inducement
(incorporating all prior allegations)

126. In negotiating the Loan Agreement, David Ault represented to Zhongshan that he had successfully completed over 50 similar loans.

127. In negotiating the Loan Agreement, Ault represented to Zhongshan that the counterparty funding the loan was an international gas and oil company.

128. In negotiating the Initial Contract, David Ault represented to Zhongshan that Rinde had never failed to secure the loan funds on any previous loan agreement.

129. In negotiating the Loan Agreement, Rinde guaranteed that return of the escrow funds would occur if the loan transaction failed.

130. All of these statements were patently false.

131. Upon information and belief, Defendants have never successfully funded a loan under the program.

132. The representations made by Ault and Rinde as set forth above were patently false at the time they were made.

133. The false representations made by Ault and Rinde to Zhongshan set forth above were material to the Term Loan Agreement and the Escrow Agreement.

134. Ault and Rinde had knowledge of the falsity of the representations at the time they made them.

135. Ault and Rinde made these false material representations with the intent to induce Zhongshan to enter into the Escrow Agreement, the Term Loan Agreement, and related documents and to make the Deposit.

136. Zhongshan justifiably relied on these statements.

137. Zhongshan has suffered actual damages in an amount to be proven at trial, but not less than $552,000.

138. Upon information and belief, that, as a direct and proximate result of the foregoing fraud, and the actions and/or omissions of Defendants, Zhongshan has sustained general, special, consequential, and incidental damages in an amount presently unknown.

139. Zhongshan will establish the precise amount of damages at trial, according to proof.

140. Defendants' actions were gross, wanton, willful, and morally culpable.

141. Defendants' conduct towards Zhongshan is only one example of a scheme that is nationwide in scope and has caused millions in losses to numerous parties.

142. Zhongshan is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE**, it is respectfully requested that this Court enter judgment in favor of Zhongshan and against Straightline as follows:

a. on the first claim for relief in the amount of $552,000, together with interest thereupon;

b. on the second claim for relief in the amount of $552,000, together with interest thereupon;

c. on the third claim for relief in the amount of $552,000, together with interest thereupon;

d. on the fourth claim for relief in the amount of $552,000, together with interest thereupon;

e. on the fifth claim for relief in the amount of $552,000, together with interest thereupon;

f. on the sixth claim for relief in the amount of $552,000, together with interest thereupon;

g. on the seventh claim for relief in the amount of $552,000, together with interest thereupon and general, special, consequential, incidental, and punitive damages in an amount to be determined at trial;

h. the costs and disbursements of this action; and

i. such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
       March 16, 2021

**SILVERMANACAMPORA LLP**
Attorneys for Plaintiff
Zhongshan Tandem Plastic Products Co., Ltd.

By: _____
Anthony C. Acampora
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300